IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENDRA PERKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOODYEAR TIRE AND RUBBER COMPANY,<br><br>Defendant. | Civil Action No. 22-1521 |

### MEMORANDUM OPINION

I. Introduction

Presently before the Court is a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Docket No. 17), with brief in support (Docket No. 19) filed by Goodyear. Plaintiffs filed a brief in opposition to the motion (Docket No. 23) and Goodyear filed a reply brief (Docket No. 24).

On December 6, 2024, Goodyear filed a notice of supplemental authority with respect to the precedential decision by the United States Court of Appeals for the Third Circuit in *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024), which was issued on September 5, 2024 (after the briefing in this case was completed). *Hasson* involved similar challenges to personal jurisdiction over claims based on "Session Replay Code" software. The court notes that counsel for Plaintiff in this case was involved in the *Hasson* litigation. The motion is ripe for decision.

II.     Factual and Procedural Background

The Court will briefly summarize the facts necessary to analyze personal jurisdiction, as set forth in the Amended Complaint (Docket No. 11).  Plaintiffs explain:

> This is a class action brought against Goodyear for wiretapping the electronic communications of visitors to its website, www.goodyear.com. Goodyear procures third-party vendors, such as Microsoft Corporation, to embed snippets of JavaScript computer code ("Session Replay Code") on Goodyear's website, which then deploys on each website visitor's internet browser for the purpose intercepting and recording the website visitor's electronic communications with the Goodyear website, including their mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time ("Website Communications"). These third-party vendors (collectively, "Session Replay Providers") create and deploy the Session Replay Code at Goodyear's request.

Amended Complaint ¶ 1.  Plaintiff alleges that "Goodyear's procurement of the Session Replay Providers to secretly deploy the Session Replay Code results in the electronic equivalent of 'looking over the shoulder' of each visitor to the Goodyear website for the entire duration of their website interaction."  Amended Complaint ¶ 2.  Plaintiff asserts claims for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701, et seq., and invasion of privacy.  Amended Complaint ¶ 3.

Plaintiff recognizes that "Defendant Goodyear Tire and Rubber Company is [a] corporation organized under the laws of Ohio, and its principal place of business in Akron, Ohio. Defendant is a citizen of Ohio."  Amended Complaint ¶ 6.   Plaintiff does not argue that this Court can exercise "general jurisdiction" over Goodyear.

Instead, Plaintiff argues that this Court can exercise specific personal jurisdiction based on the following:

> 8. This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims and harm occurred in Pennsylvania. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of Pennsylvania

2

> while they were located within Pennsylvania. At all relevant times, Defendant targeted its goods and services to Pennsylvania citizens, and knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse www.goodyear.com from devices located in Pennsylvania. Defendant chose to avail itself of the business opportunities of marketing and selling its goods and services in Pennsylvania and collecting real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania, and the claims and harm alleged herein arise specifically from those activities.
>
> 9. Goodyear maintains numerous physical retail locations in Pennsylvania, regularly advertises in Pennsylvania through multiple media and frequent visits by its famous "Goodyear Blimp" to sporting venues in Pennsylvania—such as Acrisure Stadium in Pittsburgh, and Beaver Stadium in State College—and continuously sells its goods and services to Pennsylvanians, including through its website.
>
> 10. Goodyear also knows that many users visit and interact with Goodyear's websites while they are physically present in Pennsylvania. Both desktop and mobile versions of Goodyear's website allow a user to search for nearby stores by providing the user's "current location," as furnished by the location-determining tools of the device the user is using or by the user's IP address (i.e., without requiring the user to manually input an address). Users' employment of automatic location services in this way means that Goodyear is continuously made aware that its website is being visited by people located in Pennsylvania, and that such website visitors are being wiretapped in violation Pennsylvania statutory and common law.

Amended Complaint ¶¶ 8-10.

Plaintiff provides a lengthy explanation about how Session Replay Code works and its privacy implications. Amended Complaint ¶¶ 23-42. Plaintiff avers that "Goodyear operates the website www.goodyear.com, as well as all of its subpages. Goodyear is an online and brick-and-mortar retailer and servicer for wheels, tires, and oil changes." Amended Complaint ¶ 43. Unbeknowst to users, "Goodyear intentionally procures and embeds various Session Replay Codes from Session Replay Providers on its website to track and analyze website user interactions with www.goodyear.com and its subpages." Amended Complaint ¶ 44. Among such Session Replay providers are Microsoft, which offers a product called Clarity, and Contentsquare. Amended Complaint ¶¶ 45-46, 55. The Amended Complaint contains detailed allegations about how Clarity

3

and Contentsquare work. Amended Complaint ¶¶ 46-54, 56-59. There are, however, no allegations about Goodyear's role or conduct in purposefully directing those activities toward Pennsylvania. Plaintiff simply alleges that "Goodyear's procurement and use" of the Session Replay Code products on its website constitutes a wiretap and invasion of privacy. Amended Complaint ¶ 60. Plaintiffs assert claims on behalf of the following class: "All natural persons in Pennsylvania whose Website Communications were captured in Pennsylvania through the use of Session Replay Code embedded in www.goodyear.com." Amended Complaint ¶ 85.

   III.   Legal Analysis

      A. Recent decision in *Hasson*

The United States Court of Appeals' decision in *Hasson* is largely dispositive of this case. *Hasson* involved two consolidated appeals involving personal jurisdictional challenges to complaints based on use of Session Replay Code. The Court analyzed allegations relating to Papa John's use of Session Replay Code tools on its website which are similar to those made against Goodyear in this case and concluded that the case against Papa John's should be dismissed for lack of personal jurisdiction. No petition for certiorari has been filed.

The Court in *Hasson* reviewed the general principles governing specific personal jurisdiction:

> Specific jurisdiction exists when the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). A district court sitting in diversity can exercise personal jurisdiction over an out-of-state defendant to the extent permitted by the law of the forum state. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see also* Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute permits personal jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

> The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or purposeful availment test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); and (2) the "effects" test, *see Calder v. Jones*, 465 U.S. 783, 787 & n.6, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

*Hasson*, 114 F.4th at 186.

Under the traditional test, the plaintiff must show: (1) the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invoke[ed] the benefits and protections of [the forum's] laws"; (2) the plaintiff's claims must "arise out of or relate to" at least some of those contacts, evidencing "a strong relationship among the defendant, the forum, and the litigation"; and (3) the exercise of jurisdiction over the defendant must "comport[ ] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (citations omitted).

The *Calder* "effects" test "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Id.* at 187. The Court explained that the effects test and traditional test have distinct requirements and both tests should be considered. *Id.* at 189.

The plaintiffs in *Hasson* filed a class action asserting wiretap and invasion of privacy claims against Papa John's for operating the website that deployed Session Replay Code. *Id.* at 188. The Court recognized that Papa John's (like Goodyear) has "extensive business contacts" with Pennsylvania, in that Papa John's maintains 85 brick-and-mortar locations in Pennsylvania

and "regularly markets and advertises its goods and services within Pennsylvania." *Id.* The Court nevertheless held that the complaint against Papa John's "fails under both tests." *Id.* at 190.

The Court concluded that Plaintiffs could not meet the effects test because "Papa Johns did not expressly aim its Session Replay Code at Pennsylvania by operating a website that was accessible in the forum." *Id.* at 191. The Court noted that the plaintiffs failed to allege, for example, that Papa John's website is accessible only in Pennsylvania; that the Session Replay Code is deployed only to users who access the site in Pennsylvania; or that the content of the website is tailored in any meaningful way to Pennsylvanians. *Id.* at 190. The Court emphasized: "a defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.* The Court explained:

> Our conclusion is not undercut simply because, as [the plaintiff] alleges, Papa Johns: (1) deployed Session Replay Code into the forum and harmed Pennsylvanians there; (2) allows website users to filter restaurant locations geographically; and (3) operates 85 restaurants and conducts other business activities in the Commonwealth.

*Id.* at 191. "At a minimum, [the plaintiff] had to allege that Papa Johns knew that a given user was in Pennsylvania *before* it sent the code to that user's browser." *Id.* (emphasis in original). The court explained that "Papa Johns' other in-forum commercial activities—operating restaurants and selling pizza—do not show that it expressly aimed Session Replay Code at Pennsylvania." *Id.* at 192.

The Court also concluded that specific jurisdiction was lacking under the traditional test. The Court explained:

> To be sure, whether [the plaintiff's] claims "arise out of or relate to" Papa Johns' activities in Pennsylvania is a close call. *Ford Motor*, 592 U.S. at 359, 141 S.Ct. 1017 (citation omitted). As the Supreme Court recently clarified, while "[t]he first half of that standard asks about causation ... the back half ... contemplates that some

> relationships will support jurisdiction without a causal showing." *Id*. at 362, 141 S.Ct. 1017. And "[t]he degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendant's forum contacts." *O'Connor*, 496 F.3d at 320 (cleaned up). At first glance, this would seem to tip the jurisdictional scales in [the plaintiff's] favor given Papa Johns' considerable contacts in Pennsylvania. But when we scrutinize those contacts in the context of [the] wiretapping claims, we conclude that the "connection is too weak." *Hepp*, 14 F.4th at 208.

*Id*. at 193-94 (3d Cir. 2024). The Court concluded that although Papa John's purposefully availed itself of the Pennsylvania market, there was not a strong relationship among Papa John's, Pennsylvania and the deployment of Session Replay Code on Papa John's website. *Id.* at 193; *id.* at 195 ("Papa Johns' in-state restaurant sales and marketing activities, as alleged in the complaint, are insufficiently related to [the plaintiff's] wiretapping claims."). For example, the complaint did not allege any facts regarding the company's promotion of its website in Pennsylvania or that the website was featured in an advertisement during the Eagles' Super Bowl game. Although Papa John's promoted pizza in Pennsylvania, it did not promote the device (*i.e.*, its website) that allegedly caused harm. *Id.* at 194. The Court emphasized that a plaintiff "must offer facts regarding Papa Johns' efforts to specifically direct or connect *Pennsylvanians* to the alleged harm." *Id*. (emphasis in original).

Judge Phipps dissented on this point and would have held that Papa John's was subject to personal jurisdiction under the traditional test. *Id.* at 199 ("the common thread between the defendant, the forum, and the litigation is Papa Johns' use of a session replay code on its website to record online consumer activity from a browser in Pennsylvania that was used to place orders from Papa Johns' locations in Pennsylvania."). Of course, this Court is bound by the majority opinion, which held there is no personal jurisdiction over Papa John's and emphasized the "unique 'doctrinal questions' that internet transactions raise." *Id.* at 194.

B. Application to this case

The allegations against Goodyear in the Amended Complaint are similar to the allegations against Papa John's. Plaintiffs allege that Goodyear procured and used Session Replay Code on its website. The Session Replay Code works the same way regardless of the location from which the user accessed the Goodyear website. Under Plaintiffs' logic, every company that uses Session Reply Code software would be subject to personal jurisdiction anywhere in the world from which a user could access the internet. That is not the law. Applying *Hasson*, personal jurisdiction is lacking over Goodyear.

The Amended Complaint fails under the *Calder* effects test because there are no allegations that Goodyear expressly aimed its conduct at Pennsylvania. As in *Hasson*, the Amended Complaint in this case failed to allege, for example, that Goodyear's website is accessible only in Pennsylvania; that the Session Replay Code is deployed only to users who access the site in Pennsylvania; or that the content of Goodyear's website is tailored in any meaningful way to Pennsylvanians. 114 F.4th at 190. As the Court held in *Hasson*, Goodyear does not expressly target Pennsylvania merely by operating a website that is accessible from Pennsylvania. *Id.*

Personal jurisdiction over Goodyear also fails under the traditional test. The Court accepts that Goodyear (like Papa John's) has extensive contacts and purposefully avails itself of Pennsylvania's market. As in *Hasson*, however, there are no facts pleaded in the Amended Complaint to support a strong relationship among Goodyear, Pennsylvania and the deployment of Session Replay Code on Goodyear's website. *Id.* at 193. Goodyear's in-state sales and marketing activities, as alleged in the complaint, are insufficiently related to the wiretapping and invasion of privacy claims in this case. *Id.* at 195. As in *Hasson*, the Amended Complaint did not allege any facts regarding the company's promotion of its website in Pennsylvania or that the website was

featured on the Goodyear blimp at a Pennsylvania sporting event. Although Goodyear promoted its automotive business in Pennsylvania, it did not promote its website -- the device that allegedly caused Plaintiffs' harm. *Id*. at 194.

### C. Jurisdictional Discovery

In *Power Home Remodeling Grp., LLC v. Stuckenschneider*, No. 2:23-CV-02880-JDW, 2024 WL 4336728 (E.D. Pa. Sept. 27, 2024), the Court explained that "[j]urisdictional discovery is appropriate when a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *Id.* at *4 (punctuation and citation omitted). In this case, Plaintiffs have not identified specific facts that it might be able to discover that would support the exercise of personal jurisdiction. The mere use of Session Replay Code on Goodyear's website will not suffice, as explained in *Hasson*. Plaintiffs have not sought leave to amend their complaint to meet the *Hasson* standard. There is no reasonable basis to believe that discovery would disclose facts to support the exercise of personal jurisdiction over Goodyear. Accordingly, jurisdictional discovery will not be authorized.

IV.	Conclusion

For the reasons set forth above, Goodyear's motion to dismiss this case for lack of personal jurisdiction (Docket No. 17) will be granted.  The clerk will be directed to mark this case closed.

An appropriate order will be entered.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: January 13, 2025

cc/ecf:  All counsel of record